IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **THE PUFF FACTORY, LLC**, and **JACQUELINE ALEXANDER**, <br><br>       Plaintiffs, <br><br>       v. <br><br> **PORT OF CASCADE LOCKS, JESS GROVES, BRAD LORANG, JOEINNE CALDWELL, DAVE LIPPS, JOHN STIPAN, DON MANN,** and **PAUL KOCH**, <br><br>       Defendants. | Case No. 3:20-cv-65-SI <br><br> **OPINION AND ORDER** |

J. Ashlee Albies and Maya Rinta, ALBIES & STARK LLC, 1 SW Columbia Street, Suite 1850, Portland, Oregon, 97204. Of Attorneys for Plaintiffs.

Casey M. Nokes, Nicole A.W. Abercrombie, and Justice J. Brooks, CABLE HUSTON LLP, 1455 SW Broadway, Suite 1500, Portland, OR 97201. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

The Puff Factory, LLC and its sole owner Jacqueline Alexander bring this lawsuit against the Port of Cascade Locks and several of its officials or employees in a dispute arising out of a lease agreement. Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that Plaintiffs' claims are barred by the doctrine of claim preclusion and also are time-barred under the

PAGE 1 – OPINION AND ORDER

applicable statute of limitations. For the following reasons, the Court denies Defendants' motion to dismiss.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

The Puff Factory, LLC (the Puff Factory) is an Oregon limited liability corporation that produces freeze dried fruits. Jacqueline Alexander (Alexander) is the sole member/owner of the Puff Factory. The Port of Cascade Locks (the Port) is a municipal corporation, a local governmental entity, in Cascade Locks, Oregon. The Port owns municipal properties that it leases for commercial or industrial use. Defendants Jess Groves, Brad Lorang, Joeinne Caldwell, Dave Lipps, and John Stipan are elected commissioners of the Port. Defendants Don Mann and Paul Koch are the Port's Economic Development Manager and City General Manager, respectively.

Alexander is an entrepreneur, a Hood River County pear orchardist, founder of the Puff Factory, and a Black woman. In 2013, Alexander and the Puff Factory began working with the Port to explore building the Puff Factory flagship facility in Cascade Locks. In May 2015, while the factory was still being planned, the Port and the Puff Factory entered into a 10-year lease agreement for physical building space (the Flex Building) in which the Puff Factory would operate.

The lease agreement stated that the 120-month lease term would begin September 1, 2015 and end August 31, 2025. It also provided that the Puff Factory would not have any rent obligation for the first 21 months. Thereafter, the base rent would be $3,750 per month. The Flex Building space did not have suitable utilities or amenities, and Plaintiffs were expected to make improvements to establish utility infrastructure, including installing bathrooms, an office, and

sufficient sewer, water, and electrical utility connections needed to operate the machinery used by the Puff Factory's business operations.

After signing the lease, Plaintiffs undertook significant efforts to prepare the Flex Building for occupancy. Before Plaintiffs could take occupancy, however, the Port sued the Puff Factory for breach of contract in Hood River Circuit Court (the State Litigation). That lawsuit is ongoing. In the State Litigation, the circuit court denied parties' cross motions for summary judgment and dismissed Plaintiff's counterclaims for tortious interference as time-barred. Due to COVID-19, the circuit court has not yet scheduled a trial in that case.

Plaintiffs bring this federal civil rights lawsuit asserting a claim against the Port under 42 U.S.C. § 1981[1] alleging racial discrimination in contracting and a separate claim against the individual defendants under 42 U.S.C. § 1983[2] alleging a violation of Plaintiffs' equal protection rights under the 14th Amendment. Plaintiffs contend that during the State Litigation they first learned facts suggesting that the Port treated white-owned businesses more favorably than it treated the Puff Factory, a black-owned business, by not enforcing lease contracts against white-owned businesses. Specifically, Plaintiffs allege that the Port:

---

[1] Subsection (a) of this statute provides, in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). Subsection (b) provides: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

[2] This statute provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

- administered its lease contracts and terms more strictly and severely against the Puff Factory than it did against those white owned and operated businesses;

- did not forcibly enter or dispose white-owned businesses although those businesses had violated terms for which the Port allegedly terminated the Puff Factory contract;

- did not take any enforcement action against white-owned businesses;

- did not forcibly eject white-owned businesses from their leased premises without due process of law;

- did not cancel white-owned business' contracts;

- did not seek any damages against white-owned businesses who engaged in conduct similar to Puff Factory; and

- did not initiate litigation against any white-owned businesses alleged to be in breach of a commercial lease.

ECF 11 at 28, citing Complaint (ECF 1) at ¶¶ 29-30, 32.

## DISCUSSION

Defendants assert two arguments in support of their motion to dismiss. First, they contend that Plaintiffs' claims are barred by the doctrine of claim preclusion, or *res judicata*. Defendants state that Plaintiffs could have brought their federal civil rights claims in the State Litigation, and, because they did not, Plaintiffs may not assert those claims here. Second, Defendants contend, in the alternative, that Plaintiffs' claims are untimely under the applicable statute of limitations. Defendants state that the applicable limitations period is two years, rather than four years, which is what Plaintiffs maintain. The Court addresses each argument separately.

**A. Claim Preclusion**

Federal courts must "afford the same full faith and credit to state court judgments that would apply in the State's own courts." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 463

(1982). The Court is bound to "give the same . . . preclusive effect to a state court judgment as that judgment would have in the state courts of the state in which it was rendered." *Noel v. Hall*, 341 F.3d 1148, 1160 (9th Cir. 2003); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (explaining that federal courts must "refer to the preclusion law of the State in which judgment was rendered"). There are two types of preclusion: issue preclusion (formerly known as collateral estoppel); and claim preclusion (formerly known as *res judicata*). Defendants argue that Plaintiffs' claims are barred by claim preclusion.

Claim preclusion "prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent." *Bloomfield v. Weakland*, 339 Or. 504, 510 (2005). The Oregon Supreme Court has consistently defined "claim preclusion" as follows:

> [A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

*Id.* at 510-11 (quoting *Rennie v. Freeway Transp.*, 294 Or. 319, 323 (1982)). A party is foreclosed from litigating the same claim "on any ground or theory of relief that the party could have litigated in the first instance." *Id.* at 511. "[C]ourts employ a broad definition of what could have been litigated." *Drews v. EBI Companies*, 310 Or. 134, 141 (1990). "Claim preclusion does not require actual litigation of an issue of fact or law . . . [n]or does it require that the determination of the issue be essential to the final or end result reached in the action, claim, or proceeding." *Id.* at 140. Claim preclusion does, however, require that the plaintiff had, in the former case, "[t]he opportunity to litigate . . ., whether or not it is used." *Id.* Claim preclusion applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and

PAGE 6 – OPINION AND ORDER

(3) identity or privity between parties." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

Defendants fail to show that claim preclusion applies here because there is not yet any final judgment on the merits in the State Litigation. Although the State court dismissed two of Puff Factory's counterclaims, that court also denied both parties' motions for summary judgment and has not yet set a trial date. Defendants represented that Oregon Circuit Judge Karen Ostrye, who is presiding over the State Litigation, has told the parties in that case that she will not accept any amendments to the pleadings. Judge Ostrye's statement, however, does not change the Court's analysis—it is necessary that there be a final judgment before the doctrine of claim preclusion may be invoked. Because a party asserting claim preclusion must establish all three requirements, Defendants' failure to establish that the dismissal of the Puff Factory's counterclaims constitutes a final judgment on the merits under Oregon law is dispositive of Defendants' invocation of claim preclusion.

**B.  Statute of Limitations**

Defendants also argue that a two-year statute of limitations applies to Plaintiffs' federal claims under § 1981 and § 1983. For claims that could have been brought under a federal statute before December 1, 1990, but for which no statute of limitations is provided in the relevant federal statute, a court must apply the most analogous state statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004). For claims that could only be brought under a federal statute after December 1, 1990 and for which no statute of limitations is provided, a four-year statute of limitations applies. *Id.*

1. **Plaintiffs' Claim Under Section 1981**

    a. **1991 Amendment to Section 1981**

In 1991, Congress added a new subsection to § 1981, defining the phrase to "make and enforce contacts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Jones*, 541 U.S. at 372-373. Before this amendment, conduct occurring after the formation of a contract (*i.e.*, post-formation conduct) simply was not actionable under § 1981. *Id.* at 374; *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 449-50 (2008) (explaining that the 1991 amendments defined "make and enforce contracts" to include post-formation conduct, including termination, to explicitly overrule earlier Supreme Court precedent finding that the pre-1991 version did not protect from racially discriminatory contract performance or termination). Claims related to the negotiation and formation of a contract were, however, possible under § 1981 before the 1991 amendment. *Jones*, 541 U.S. at 372. Because the expansion of § 1981's actionable conduct occurred after December 1, 1990, a four-year statute of limitations applies to claims based on alleged racial discrimination in the performance or termination of a contract.

Defendants argue, however, that the termination of the lease through initiation of the State Litigation is conduct protected by Oregon's so-called "litigation privilege." Thus, Defendants assert that a two-year statute of limitations governing personal injury claims applies to Plaintiffs' claims based on pre-1991 actionable conduct, namely the formation of the lease contract. Plaintiffs respond that (1) the litigation privilege is a state common law privilege that does not apply to a federal claim; (2) invocation of such a privilege here would undermine the policies behind that privilege, and (3) Plaintiffs' allegations include other aspects of contract enforcement in addition to contract termination through the State Litigation.

### b. Common Law Litigation Privilege Generally

The common law litigation privilege doctrine originally developed to protect lawyers from tort liability for defamation based on statements they made during litigation. As explained by the Oregon Court of Appeals, the litigation privilege

> is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore, the privilege is absolute. It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.

*Mantia v. Hanson*, 190 Or. App. 412, 418 (2003) (quoting *Restatement (Second) of Torts*, § 586 cmt a (1977)). This doctrine has been expanded beyond tort immunity for defamation to include other common law torts and to apply to litigants as well as their lawyers. *See id.* at 426 ("The absolute privilege applies not only to defamation actions, but to any tort action based on statements made in connection with a judicial proceeding.").

Although it is often referred to as "absolute," there are some recognized exceptions to the litigation privilege. For example, the litigation privilege does not provide immunity from suit for malicious prosecution or for unfounded litigation-based tortious interference claims. *See Radish Seed Growers Ass'n v. Nw. Bank*, 2017 WL 6048169, at *6 (D. Or. Oct. 3, 2017), *report and recommendation adopted sub nom. Radish Seed Growers' Ass'n v. Nw. Bank*, 2017 WL 6041935 (D. Or. Dec. 5, 2017) (explaining that unfounded litigation-based tortious interference claims are actionable despite the privilege); *Mantia*, 190 Or. App. at 420 (explaining the exception from the absolute privilege for malicious prosecution claims); *see also Chase v. Gordon, Aylworth & Tami, P.C.*, 2020 WL 1644310, at *9 (D. Or. Feb. 14, 2020), *report and recommendation adopted*, 2020 WL 3977608 (D. Or. July 14, 2020) (finding that litigation privilege did not apply to statements misrepresenting service costs and seeking inflated fees for expedited service

because "instead of securing freedom from retaliation for actions taken to vindicate a claim, immunizing the conduct alleged here would secure cover for wrongs that escape redress").

### c. Application of Litigation Privilege to Federal Statutory Claims

The common law litigation privilege applies to state tort claims arising out of statements and conduct connected to litigation. *See Mantia*, 190 Or. App. at 423 ("[W]e began extending the privilege to preclude claims for torts other than defamation."); *id.* at 426 (noting that the privilege applies to "any tort action based on statements made in connection with a judicial proceeding"); *see also Graham v. U.S. Bank, Nat'l Ass'n*, 2015 WL 10322087, at *16 (D. Or. Dec. 2, 2015), *report and recommendation adopted*, 2016 WL 393336 (D. Or. Feb. 1, 2016) ("Statutory torts are subject to the litigation privilege. Where the Oregon legislature explicitly or implicitly creates a cause of action for violating *state law*, such a cause of action is a statutory tort." (emphasis added)). Defendants, however, have presented no persuasive authority, and the Court can find none, suggesting that this state common law tort privilege protects litigants from liability under any federal statute, let alone § 1981. Defendants cite *Graham* and suggest that *Graham* applied the Oregon litigation privilege to a federal statutory claim. Defendants are incorrect. The court in *Graham* only applied the litigation privilege to state law claims for trespass to chattels and under the Oregon Unfair Trade Practices Act. The court in *Graham* specifically stated, as quoted above, that the common law litigation privilege applies to state law torts. Defendants' only other citation is to a California case discussing the California litigation privilege and thus is inapposite. On the other hand, in an analogous case in this district, the court expressly held that the common law executive privilege, which shields state and local public officials from liability for defamatory statements or publication of information resulting in an invasion of privacy, did not apply to a claim under § 1981. *DeWalt Prods., Inc. v. City of*

*Portland*, 2019 WL 4045659, at *51 (D. Or. Aug. 26, 2019) (declining to apply the state-created executive privilege to federal claims, including a § 1981 claim).

### d. Purpose of the Common Law Litigation Privilege

Although the Court holds that the Oregon common law litigation privilege is inapplicable in this federal civil rights litigation, the Court also has considered Plaintiff's other arguments, as the basis for an alternative ruling. Thus, even if Oregon's common law litigation privilege applied to claims asserted under federal law, the privilege does not provide absolute immunity for the initiation of a lawsuit. Oregon courts have consistently found exceptions for the malicious or bad faith initiation of lawsuits, as discussed above. The rationale for these exceptions is that immunizing such conduct would not serve the purpose of the litigation privilege, which is to permit zealous advocacy of validly brought claims without fear of retaliatory tort claims for conduct and statements made during the course of litigation. The purpose is not to prevent accountability for *any* form of misconduct stemming from the initiation of litigation. *See Chase v. Gordon,* 2020 WL 1644310, at *9 ("Even conduct that does not meet the elements of wrongful initiation may fall outside the litigation privilege if it does not serve the purpose of enabling the parties to vindicate their rights in court without fear of retaliation.").

Further, Defendants' argument, if accepted, would prevent potential plaintiffs from holding accountable persons who engage in racially discriminatory contracting practices through legal action. This is a result that contravenes the purpose of the litigation privilege. *See Mantia*, 190 Or. App. at 429 (concluding that the privilege should not be extended to conduct which, if immunized, would not serve the purpose of the privilege). The 1991 amendments to § 1981 were made to provide a remedy for racial discrimination in the performance or termination of contracts. The purpose of the litigation privilege is to permit zealous advocacy by

PAGE 11 – OPINION AND ORDER

attorneys and litigants free from concern that their conduct or statements made during the course of litigation may form the basis for tort claim or counterclaim.

The purpose of the privilege is *not* to permit the wrongful and harmful initiation of a lawsuit, as evidenced by the exceptions that Oregon courts have expressly created to permit certain tort claims for wrongful initiation and related torts. To allow Defendants' invocation of the litigation privilege here would create a loophole through which landlords could escape liability for racially discriminatory lease enforcement and performance by suing the tenant who is being discriminated against. Such an outcome is anathema to the purpose of federal civil rights laws and to the purpose of the litigation privilege.

### e. Defendants' Conduct in Addition to Filing the State Litigation

Plaintiffs also argue that the Complaint contains a number of other allegations of racially discriminatory conduct in addition to the mere filing of the State Litigation. Such allegations, Plaintiffs argue, ground their § 1981 claim in post-formation conduct that is made actionable by the 1991 amendments and thus require a four-year, rather than a two-year, statute of limitations. Plaintiffs allege the following in their Complaint:

> 27.    The Port did not cancel its lease with the Puff Factory, nor did it seek permission to allow The Renewal Workshop, Inc. to enter into the premises while the Puff Factory was in possession of the premises or to take over the Puff Factory's lease. The Port's entry while the flex building space was rented to the Puff Factory was unlawful and in violation of the Laws of this State requiring a judicial decision before forcible entry into a leased space of a tenant. The Port has never engaged in such forcible entry into or to relet the lease premises rented by any of the white people who were in violation of the terms of their lease.
>
> 28.    During the lawsuit, The Port alleged that the Puff Factory did not meet its obligations under the Flex Building lease, that it defaulted through non-performance and failure to cure its deficiencies and claimed damages for early termination. The Port also alleged that it invested significant money, time, and other resources into the Flex Building.

PAGE 12 – OPINION AND ORDER

29.     Through the course of the lawsuit, in depositions taken in October and November of 2019, Plaintiffs also learned for the first time, that several other businesses, owned and operated by white people, were in breach of their leases with The Port, in the same or similar manner which The Port alleged The Puff Factory was in breach. For example, Plaintiffs learned these other tenants habitually made late payments, did not observe the requirements of their lease obligations, or terminated their leases early, but The Port did not attempt to collect an early termination fee or any other damages from these businesses owned by white people. Plaintiffs also learned that businesses owned and operated by white people who held commercial leases with the Port did not have liability insurance within the same identified time after execution of their contracts that The Port claimed The Puff Factory did not have, which it did.

30.     The Port administered its lease contracts and terms more strictly and severely against the Puff Factory than it did against those white owned and operated businesses and did not forcibly enter or dispose those businesses although they had violated terms for which the Port terminated the Puff Factory contract. For the first time in October and November of 2019, Plaintiffs learned that The Port did not take any enforcement action against those businesses, did not forcibly eject them from their leased premises without due process of law, did not cancel their contracts, and did not seek any damages against them.

31.     Likewise, in October and November of 2019, Plaintiffs learned that The Port provided, is currently providing, or has offered to provide substantial funding to other businesses owned and operated by white people to construct buildings—similar funding it denied to Plaintiffs. Plaintiffs further learned that The Port offered more favorable treatment and terms to businesses owned and operated by white people than it did to Plaintiffs.

ECF 1 ¶¶ 27-31.

Defendants argue that all post-formation allegations concern statements and conduct "relevant" to the State litigation and that the litigation privilege covers allegedly tortious conduct that occurs before litigation. This is not an accurate description of the litigation privilege. The privilege protects some statements and conduct made before litigation, but only if the statement or conduct is in anticipation or preparation for litigation. In *Wollam v. Brandt*, cited by

PAGE 13 – OPINION AND ORDER

Defendants, the Oregon Court of Appeals determined that a letter sent by a party's attorney to another party's attorney, after both parties had retained counsel in anticipation of litigation stemming from a dispute later litigation, was subject to the litigation privilege. 154 Or. App. 156, 163-164 (1998). Similarly, in *Graham* the court restated the principle that only conduct in anticipation of litigation is protected by the privilege, when filings in a foreclosure judgment, writs of assistance, and communications regarding the foreclosure filings and writs of assistance were the disputed conduct. *Graham*, 20154 WL 10322087 at *16.

These cases, and the principle they support, are a far cry from the post-formation, pre-litigation conduct alleged by Plaintiffs. The post-formation conduct alleged by Plaintiff was not exclusively (or even primarily) in preparation for or anticipation of litigation. Plaintiffs summarize their allegations of the relevant post-formation conduct by the Port as follows:

- administered its lease contracts and terms more strictly and severely against the Puff Factory than it did against those white owned and operated businesses,

- did not forcibly enter or dispose white owned businesses although those businesses had violated terms for which the Port allegedly terminated the Puff Factory contract,

- did not take any enforcement action against white owned businesses,

- did not forcibly eject white owned businesses from their leased premises without due process of law,

- did not cancel white owned business' contracts,

- did not seek any damages against white owned businesses who engaged in conduct similar to Puff Factory

PAGE 14 – OPINION AND ORDER

These allegations describe conduct directed toward Plaintiffs and a lack of similar conduct directed toward white-owned businesses. It does not appear that Defendants took any of these actions exclusively or even primarily in anticipation of litigation. Conduct that may later form the basis of future litigation is not the same as conduct taken in anticipation of litigation. There must be a stronger and more direct link. Administering a lease contract strictly, forcibly entering a lessee's premises, forcibly ejecting a lessee, or cancelling a contract may all be actions taken not in anticipation of litigation. At this stage of the litigation, based only on Plaintiffs' allegations in the Complaint, the Court does not find that any of the above actions were in preparation for Defendants' initiation of the State Litigation. Accordingly, Plaintiffs' allege post-formation conduct that is outside Oregon's common law litigation privilege, even if that privilege were to apply in a case brought under the federal civil rights statutes.

### f.   Conclusion

Defendants' argument that Oregon's litigation privilege applies to Plaintiffs' federal civil rights claims is rejected. Defendants' argument that Plaintiffs have only alleged conduct relating to contract formation, and therefore that a two-year statute of limitations applies to Plaintiffs' § 1981 claim, also is rejected. Plaintiffs have sufficiently alleged post-formation conduct that was not actionable before the 1991 amendment to § 1981. Accordingly, the four-year statute of limitations applies, and Plaintiffs' § 1981 claim is not time-barred.

### 2.   Plaintiffs' Claim Under Section 1983

"It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). In Oregon, the personal injury limitations period is two years. Or. Rev. Stat. § 12.110. Defendants argue that this limitations period began to run in 2016 when Plaintiffs had the opportunity to but did not engage in discovery during the

State Litigation. Oregon's discovery rule, however, also applies to claims asserted under § 1983. Thus, the relevant limitations period begins, or accrues, either when the discriminatory conduct occurred or when the plaintiff learns of, or through the exercise of reasonable diligence should have learned of, previously undiscovered facts supporting a discrimination claim, whichever occurs later. *See Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012).

Plaintiffs contend that they were unaware of the alleged racial disparities before discovery in the State Litigation in 2019. Defendants respond that Plaintiffs failed to engage in discovery earlier in that lawsuit, which was possible as early as 2016, and that this lack of investigative diligence renders this action untimely. For Plaintiffs' § 1983 (and § 1981 claims if a two-year statute of limitations were to apply), the question of diligence and whether Plaintiffs *knew or should have known* of their cause of action more than two years before the filing of this federal lawsuit is a question of fact more appropriately decided by a factfinder. *See Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter"). The Court rejects Defendants' argument that Plaintiffs' § 1983 claim should be dismissed as time-barred at the pleading stage.

## CONCLUSION

The Court denies Defendants' Motion to Dismiss (ECF 10).

**IT IS SO ORDERED**.

DATED this 6th day of November, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge